ESTHER KEESWOOD, MARY JOE WALLACE, EVA WILLIE
DOUGLAS WILLIE, ADA WILLIE for herself and for her
daughter KAREN WILLIE, ALLEN JIM, MARIE SMITH
for herself and for her two sons ANDREW SMITH and EDWARD SMITH

Plaintiffs-Appellees

vs.

THE NAVAJO TRIBE, THE NAVAJO DIVISION OF LAW
ENFORCEMENT, RAYMOND TSO, individually and as
Tribal Prosecutor, CLARENCE HAWTHORNE, JOANN RUSSELL,
BARBARA BIGTHUMB, STEWART SILENTMAN, ALICE TSO,
KEE THIN, WALTER JAKE, JIMMY THINN, individually
and as Police Officers

Defendants-Appellants

Decided on May 07, 1979

George A. Harrison, Albuquerque, New Mexico, for Plaintiffs-Appellees

John A. Chapela and Genevieve K. Chato, Navajo Tribal Legal Department,
Window Rock, Arizona for Defendants-Appellants

Before NESWOOD, Acting Chief Justice and BECENTI and WALTERS,
Associate Justices

NESWOOD, Acting Chief Justice

I.

This case comes on appeal from a decision of the Shiprock
District Court finding in favor of Esther Keeswood, Allen Jim, Douglas
Willie, Eva Willie, Ada Willie, Marie Smith and Andrew Smith for
unlawful arrest and excessive force.

On August 25, 1976, the plaintiffs and other persons
gathered around the Navajo Tribal Council chambers in Window Rock.

The Navajo Tribal Council was then meeting to discuss a coal gasification proposal which was highly controversial. Apparently, some of the gathered demonstrators had occupied seats of various Councilman during the day and had prevented the meeting of the Council the prior day.

On the day in question the number of demonstrators grew as the day wore on. At some point in the afternoon, between 5:00 P.M. and 6:00 P.M., the sound of breaking glass was heard. The Council promptly adjourned and the police were summoned to the rear of the Council Chambers. Two squads were formed with one squad being instructed to arrest those demonstrators refusing to obey an order to disperse.

After the formation of the two squads, an order to disperse was given over a "voice box" in both Navajo and English. After approximately five minutes, the police proceeded to arrest anyone remaining in the vicinity of the Council Chambers.

The appellees were all arrested without warrants on various charges. Subsequently, all criminal charges were dismissed by the Window Rock District Court.

On September 14, 1977, the appellees filed a complaint in the Shiprock District Court alleging unlawful arrest with malice resulting in mental suffering and humiliation, excessive force resulting in medical costs and pain and suffering, and malicious prosecution.

On May 31, 1977, the appellants moved for dismissal on the grounds that the Tribe is immune from suit and that the individual defendants were immune because they were acting in their official capacities with the Tribe.

During a preliminary hearing, the Shiprock District Court dismissed the Navajo Tribe as a defendant on the grounds of sovereign immunity.

At the trial, evidence was admitted, over the appellants' objections, concerning the conditions of the Window Rock jail where the appellees were incarcerated.

Also at trial, the Court excluded evidence offered by the appellants of appellees' conduct on August 24, 1976.

In a written opinion issued August 9, 1978, 1 Nav. R. 362, the Shiprock District Court concluded that the arrests of Mary Joe Wallace, Ada Willie, Karen Sue Willie and Marie Smith were justified. However, in the damages section of its opinion, Marie Smith was awarded $1000 for unlawful arrest. Allen Jim and Douglas Willie were each awarded $500 for unlawful arrest and Eva Willie, Esther Keeswood and Andrew Smith were awarded $1000 apiece for unlawful arrest.

For use of excessive force, Douglas Willie, Eva Willie, Ada Willie and Esther Keeswood were awarded $1000 each. These same individuals were awarded an additional $1000 each in punitive damages.

The Court awarded $835.29 in legal fees.

The decision of the Shiprock District Court reinstated the Tribe as a defendant and entered judgment against the Tribe and the Police Officers. The cause of action against Raymond Tso was dismissed as the Prosecutor was found to be clothed with qualified immunity.

On September 8, 1978, the appellants filed this appeal.

II.

The issues presented by this appeal are:

1. Did the Shiprock District Court err in reinstating the Navajo Tribe as a defendant at the conclusion of the case?

2. Is the Navajo Tribe immune from suit by the doctrine of sovereign immunity?

3. Are the individual police officers immune from suit if the Navajo Tribe is?

4. Whether the standard adopted by the Shiprock District Court for notice to disperse was reasonable?

5. Whether the District Court erred in refusing to allow the appellants to present evidence of the appellees conduct?

6. Whether the District Court erred in admitting evidence of the conditions at the Window Rock jail?

7. Whether the District Court erred in its award of legal

fees?

8. Whether the District Court erred in its award of punitive damages?

III.

The due process clause of the 1968 Indian Civil Rights Act, 25 U.S.C. 1302(8) requires that Indian governments and courts ensure fundamental fairness in all tribal actions. Procedural due process requires that one be given adequate notice and an opportunity to be heard before one can be deprived of life, liberty or property.

At the preliminary hearing of this matter, the Navajo Tribe was dismissed as a defendant. The trial proceeded against the named individuals only and therefore no defense was presented on behalf of the Tribe.

Appellees seek to have this Court declare that any error committed by the District Court in reinstating the Tribe was harmless because the defense would have been identical to that presented on behalf of the individuals.

This Court cannot be in the position of guessing what other defenses the Tribe might have presented. A review of the transcript does not necessarily lead us to the conclusion that defense counsel represented the Tribe's interests throughout.

Therefore, this Court concludes that the District Court erred in reinstating the Tribe as a defendant at the conclusion of the case.

IV.

At the preliminary hearing, the Navajo Tribe was dismissed as a defendant on the grounds of sovereign immunity. In its written opinion, I Nav. R. at 365, the District Court stated:

"In our great nation, the doctrine of sovereign immunity has been vastly modified by the Court of Appeals in Halderman Dennison, et al. vs. Tucson Gas & Electric Co., et al... In the TG&E case the Court of Appeals on the one hand recognized and upheld the Tribe's sovereign immunity but it also chose to ignore it by holding the Tribe liable by going beyond the legal fiction and holding the real party liable."

The District Court held the Navajo Tribe liable in the instant case based upon this language.

In the TG&E case, the matter before the Court was that of eminent domain. It was always the Navajo Tribe who would pay the damages in that case because it was the Navajo Tribe that had condemned the land. Therefore, the Court of Appeals in TG&E did not actually alter the doctrine of sovereign immunity. The Court did recognize that the individuals being sued would not actually pay the damages themselves. Therefore the reliance of the District Court on

the TG&E case for its decision to hold the Tribe liable was misplaced.

This Court has conducted an exhaustive review of the Navajo Tribal Code in an effort to determine whether the Tribal Council ever specifically abrogated its sovereign immunity. The only mention of sovereign immunity is in Title 6, Section 6l6(b)(1) of the Navajo Tribal Code, which states in part:

> "Nothing contained herein nor in any other provision of this subchapter shall be construed to waive the right of the Navajo Tribe to assert the defense of sovereign immunity in any lawsuit against the Navajo Tribe, and nothing contained herein nor in any other provision of this subchapter shall impair the validity of this defense; and the right to assert that defense is and shall remain inviolate and inviolable."

While this provision is contained within the subchapter dealing with the Navajo Housing Authority under Community Development, the Navajo Tribal Council was under the belief in 1966, when this provision was passed that the Navajo Tribe had sovereign immunity. If the Tribe had already abrogated its immunity from suit, this provision would not have been added.

Therefore, this Court must rule that the Navajo Tribe has impliedly adopted the doctrine of sovereign immunity and has only selectively abolished it.

We next turn to an examination of whether this Court should judicially abolish the doctrine of sovereign immunity, particularly in light of the fact that it has never specifically been adopted.

The Navajo Tribe has relied heavily on the case of Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56 L.Ed.2d 106, 98 S.Ct. 1670 (1978) for its position that the Navajo Tribe has sovereign immunity. However, a close reading of that case reveals that the Supreme Court held that under existing federal legislation, no action could be pursued against an Indian Tribe in federal or state courts, except for habeas corpus actions. No mention was made of any immunity from suit in a tribal forum. We therefore conclude that the Martinez case would not bar this Court from judicially abolishing sovereign immunity.

The United States of America still adheres to the doctrine of sovereign immunity although the enactment of the Federal Tort Claims Act, 28 U.S.C. 1346 and 28 U.S.C. 2671 et seq. and the Civil Rights Act of 1871, 42 U.S.C. 1983 has abrogated it in specific circumstances. However, many acts of the United States are called into question by the mechanism of suits against individuals, such as cabinet secretaries. Halona v. MacDonald, 1 Nav. R. 189 at 202.

Since the late 1950's, the doctrine of sovereign immunity has been eroded or abrogated in most states. The landmark case in the state of Arizona is Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963). In holding the state Highway Commission could

be held liable for the wrongful death of a person due to the Highway Department's negligence, the Court said:

"We are of the opinion that when the reason for a certain rule no longer exists, the rule itself should be abandoned. After a thorough re-examination of the rule of governmental immunity from tort liabil-ity, we now hold that it must be discarded as a rule of law in Arizona and all prior decisions to the contrary are hereby over ruled."

381 P.2d at 109

The leading case in the state of New Mexico is Hicks v. State, 88 N.M. 588, 544 P.2d 1153 (1976). In Hicks, the Court stated that the doctrine of sovereign immunity was a judicially created doctrine which could therefore be judicially abrogated.

An appendix to the Hicks decision, taken from the Re-statement (Second) Torts, Special Note 895B at 21 (Tent. Draft No. 19, March 30, 1973), has a list of the states and their positions re-garding governmental immunity. Twenty-one of the states have abolish-ed the doctrine, eight of them judicially. Another seventeen have abolished it partially or when there is insurance. Only thirteen states retain total immunity.

While the leading case law in this country supports the abolition of the doctrine of sovereign immunity, this Court notes that the doctrine has been abrogated primarily through the legislative pro-

cess. We do not wish to be in the position of deciding the Navajo Nation's position on this matter because it would seem to us to be a subject best addressed by the Navajo Tribal Council. To abolish this doctrine judicially would merely allow the Tribal Council to shirk its duties. More importantly, it would put this Court in the position of revising legislation every time the Council failed to address an issue. While some courts, such as the Supreme Court of California, do not mind that role, it is the opinion of this Court that pressing issues are best decided by the elected officials.

Therefore, this Court holds that the Navajo Tribe cannot be sued without its consent. We strongly urge the Navajo Tribal Council to examine the trend in American law and take some kind of affirmative action on the issue of sovereign immunity.

V.

Defendants urge upon this Court that if the Navajo Tribe is immune from suit, so are the individual police officers. Defendants correctly state that an individual acting as an agent for the Tribe is immune from suit as long as he is acting within the scope of his official duties.

As was stated in part IV of this opinion, even the jurisdictions which cling to sovereign immunity recognize that an official of the government can be sued for exceeding his lawful authority. Navajo law abounds with cases where officials of the Navajo Tribe have been

sued. See: Trujillo v. Morgan, I Nav. R. 55; Dennison v. Tucson Gas and Electric Co., I Nav. R. 95; Nakai v. MacDonald, I Nav. R. 107; Halona v. MacDonald, I Nav. R. 189; Yazzie v. Board of Election Supervisors, I Nav. R. 213; Deswood v. Navajo Board of Election Supervisors, I Nav. R. 306; Benally v. Lancer, I Nav. R. 312; Dana v. Navajo Housing Authority, I Nav. R. 325; Davis v. Navajo Tribe, I Nav. R. 379; Gudac v. Marianito, I Nav. R. 385.

The precise issue in this case was whether or not the officers exceeded their lawful authority. If they were exceeding their authority, a judgment can be entered against them individually.

It is of no import whether the Navajo Tribe will eventually pay any judgment. The courts of the United States do not worry whether or not the federal government will comply with its rulings against cabinet secretaries.

Similarly, it is of no import that the individual defendants answered in the response to interrogatories that the Navajo Tribe would pay any judgment. Obviously, the answer of the individual defendants cannot be binding on the Navajo Tribe.

We therefore hold that individuals can be sued for exceeding their lawful authority as agents for the Tribe. The District Judge did not commit error in so holding.

VI.

In its written opinion, the Shiprock District Court adopted a standard for orders to disperse during public assemblies. The standard adopted by the District Court for dispersal notice was that it had to be given over powerful sound equipment in Navajo and English at least four times, allowing people ten minutes to leave.

This Court concludes that the standard set by the District Court is reasonable and it is hereby adopted.

In adopting this standard, this Court is attempting to prevent a case by case evaluation of whether proper notice was given. While all of the defendants may have heard the order to disperse in this case, the failure to set a clear standard will only result in more law suits in the future.

A review of the written opinion reveals that the Shiprock District Court did not award damages for failure to comply with this standard. Therefore, the District Judge committed no error.

VII.

The Shiprock District Court excluded evidence of the plaintiffs' conduct at the time in question. This evidence was offered by the defendants to establish the intent of the officers in making the arrests and in using the amount of force they did.

Clearly, in order to establish whether or not the officers were exceeding their lawful authority - the central issue of this case - it was necessary to establish the intent of the officers. By excluding this evidence, the District Court prevented the officers from ever showing they were acting within the scope of their lawful authority.

VIII.

The District Court also admitted evidence of the conditions at the Window Rock jail where the plaintiffs were held.

Once the Navajo Tribe was dismissed as a defendant, it is the opinion of this Court that evidence concerning the condition of the jail became irrelevant. None of the individual defendants were responsible for the condition of the jail. The conditions therefore had no probative value as to the issue of damages.

Because testimony concerning jail conditions might have led the judge to award higher money damages, this Court concludes it was error to allow such testimony.

IX.

Another issue before this Court is the District Court's award of $835.39 for legal fees. It is undisputed by the plaintiffs that this entire amount was used for the legal fees for all the named plaintiffs and several others as well.

The District Court found against four of the plaintiffs in this action. However, by not reducing the award of legal fees by their share, the defendants were in fact being required to pay for their lawful conduct. Additionally, legal fees were apparently paid for non-parties to this suit.

The District Court should have awarded only those legal fees apportioned to the successful plaintiffs.

X.

In addition to its awards for unlawful arrest and execessive force, the District Court awarded punitive damages.

It is a well settled principle of law that absent actual malice, ill-will or utter disregard of the consequences, punitive damages will not lie.

This Court has been unable to find any evidence of malice or ill-will. Therefore, we conclude the District Judge erred in its award of punitive damages.

XI.

This Court has encountered one other problem with the District Court's written opinion. At I Nav. R. 371, the Court concluded that the arrest and imprisonment of Marie Smith was proper. However,

-59-

at I Nav. R. 377, the Court awarded Marie Smith $1000 for unlawful arrest and imprisonment. One of the two statements in the opinion is improper, but it is impossible for this Court to determine which.

XII.

This Court concludes that the District Court erred in reinstating the Navajo Tribe as a defendant. However, that error alone in the opinion of this Court, would not be enough to reverse the decision of the Shiprock District Court.

What does amount to reversable error is the failure of the District Court to allow testimony concerning plaintiffs' conduct and the admission of the conditions at the Window Rock jail.

In its re-trial of this case, the Shiprock District Court is directed to determine whether the individual police officers exceeded their lawful authority in light of the plaintiffs' conduct. Any award of damages is to be for unlawful arrest and use of excessive force. The District Court is directed not to award any damages for failure of the police of comply with the dispersal standard. Any award of attorney fees shall be apportioned to those receiving a damage award. No punitive damages shall be awarded absent a showing of malice.

The Navajo Tribe is dismissed as a defendant due to its sovereign immunity. Raymond Tso is also dismissed as a defendant.

We also rule that agents of the Navajo Tribe may be held individually liable if they exceed their lawful authority.

We adopt the standard set forth in Part VI of this opinion for all future dispersal orders.

Reversed and Remanded for proceedings not inconsistent with this opinion.

BECENTI, Associate Justice and WALTERS, Associate Justice, concur.